UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| ROBIN BARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:17-cv-00616-JD-MGG |
| | ) | |
| ZIMMER BIOMET HOLDINGS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Robin Barney ("Barney"), by counsel, files this Third Amended Complaint and Demand for Jury Trial against Defendant Zimmer Biomet Holdings, Inc. ("Zimmer Biomet") pursuant to the Equal Pay Act, 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq*., and Indiana contract law.

## I.     PARTIES, VENUE, AND JURISDICTION

1.     Barney is a citizen of Indiana and resident of Syracuse, Indiana.

2.     Zimmer Biomet is a domestic corporation organized and incorporated under the laws of Delaware with its principal place of business located in Warsaw, Indiana.

3.     Barney, a female, is a former "employee" of Zimmer Biomet as defined in the Equal Pay Act, 29 U.S.C. § 203(e), and Title VII, 42 U.S.C. § 2000e(f).

4.     Zimmer Biomet is an "employer" as defined in the Equal Pay Act, 29 U.S.C. § 203(d), and Title VII, 42 U.S.C. § 2000e(b).

5.     This Court has personal jurisdiction over Plaintiff and Defendant and venue is proper in this Court.

6.      This Court has original subject matter jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, as amended, and Plaintiff's Equal Pay Act claims, pursuant to 42 U.S.C. § 2000e-2, 29 U.S.C. § 206(d), and 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over Barney's breach of contract claims pursuant to 28 U.S.C. § 1367 in that the facts and circumstances of the supplemental state law claims are intertwined with those of the claims arising under federal law.

8.      Venue is proper pursuant to 28 U.S.C. § 1391, in that Zimmer Biomet is subject to personal jurisdiction in the Northern District of Indiana, Zimmer Biomet regularly conducts business activities within the Northern District of Indiana, and a substantial part of the events giving rise to the claims occurred in the Northern District of Indiana.

9.      Barney satisfied her requirement to exhaust administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 11, 2017, against Zimmer Biomet Holdings, Inc. alleging gender discrimination.

10.     On or about August 30, 2017, the EEOC issued a Notice of Right to Sue related to Barney's Charge of Discrimination.

## II.      FACTUAL ALLEGATIONS

11.     Barney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as if fully set forth here.

12.     Barney became the Senior Vice President of Operations of Biomet, Inc. on September 2, 2008.

13.     On September 2, 2008, Barney entered into an Employment Agreement with Biomet, Inc., attached hereto as Exhibit A.

14.     Biomet, Inc. merged with Zimmer Holdings, Inc. to become Zimmer Biomet Holdings, Inc. ("Zimmer Biomet") on June 24, 2015.

15.     As a result of the merger, Barney became the Senior Vice President of Global Operations and Logistics at Zimmer Biomet.

16.     Around August of 2016, Zimmer Biomet's Senior Vice President of Human Resources, Bill Fisher, informed Barney that her job would be moved from Warsaw, Indiana to Switzerland, requiring her relocation by the end of 2017.

17.     On September 9, 2016, Zimmer Biomet's Senior Vice President of Human Resources, Bill Fisher, asked Barney whether she would in fact relocate to Switzerland, indicating that the Chief Executive Officer needed an answer. Barney stated that she needed time to think about it.

18.     Barney later informed Zimmer Biomet's Senior Vice President of Human Resources that she did not wish to relocate to Switzerland, and was left to conclude that her employment would therefore be terminated before the end of 2017, and that the company would pay her the lucrative severance package provided for in her Employment Agreement.

19.     Around October of 2016, Zimmer Biomet's Chief Financial Officer demanded that Barney concoct a "story" to mislead Zimmer Biomet investors about the root cause of the 2016 Q3 shortfalls in sales on an upcoming investor call that would take place on November 1, 2016.

20.     Barney refused to make material misrepresentations to the investors.

21.     On October 28, 2016, Zimmer Biomet's Chief Executive Officer called Barney's cellular telephone and instructed Barney to make immediate, significant organizational changes

as a result of an ongoing U.S. Food and Drug Administration audit that began on September 12, 2016, which would result in employees being terminated for cause under a false pretext.

22.     Barney refused to terminate any employees for cause as a result of the FDA audit because she did not feel it would be ethical or truthful to do so. Zimmer Biomet's CEO stated that he was not happy with her refusal, and that they would talk further about it.

23.     Based upon her prior experience and interaction with Zimmer Biomet's CEO, and the fact that the company took action that same day (October 28, 2016) to terminate at least two senior leaders (R. White and R. Castaneda), Barney reasonably expected that she would be fired for refusing the CEO's directive to terminate employees in her reporting structure.

24.     The FDA inspection of Zimmer Biomet's site in Warsaw began in mid-September and concluded just prior to Thanksgiving.  It was clear after the first 4 weeks of the inspection that it was not going well.  In fact, the inspection resulted in 14 483 observations and was 56 pages in length.  Based on Zimmer Biomet's response to the FDA's 483 inspection of the Warsaw North Campus that concluded in November, 2016, Barney, was specifically noted as a reason for the poor quality culture at that site.  And that the company had chosen to replace her with a Zimmer legacy employee.  She was the most senior executive specifically named in that document.

25.     After speaking to Zimmer Biomet's CEO in the morning, later the day of October 28, 2016, Barney submitted her two-week's notice of resignation via email, which would be effective November 11, 2016.

26.     Barney felt that she had no choice but to resign, or be forced to participate in unethical and fraudulent business practices, potentially exposing herself to personal legal liability for securities fraud, for example.

27.     Based upon what she had been instructed to do by the Chief Financial Officer in preparation for the Q3 earnings call, Barney reasonably expected that if she complied with the instruction to mislead investors, she could be personally liable for violations of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

28.     Barney was constructively discharged and forced to resign from Zimmer Biomet, effective November 11, 2016, instead of being fired and possibly prosecuted for securities fraud.

29.     The work conditions for Barney at Zimmer Biomet had become so intolerable that Barney had no other option, but to resign.  She had refused an order to mislead investors and commit securities fraud.  She had refused an order to terminate employees "for cause" when those employees had done nothing to warrant termination for cause.  She reasonably expected to be terminated for refusing to comply with these direct orders from the Chief Financial Officer and Chief Executive Officer.  She reasonably expected to be terminated for the poor on-going FDA audit results and resulting product backorders and significant lost sales that were to ensue.

30.     Barney was an eligible participant in Zimmer Biomet's 2009 Stock Incentive Plan ("Stock Incentive Plan"), a true and accurate copy of which is attached as Exhibit B.

31.     Barney was 55 years old at the time of her termination.

32.     Barney would have completed 10 years of service with Zimmer Biomet and its subsidiaries on May 19, 2017.

33.     Barney's Employment Agreement includes a change in control provision, which entitles Barney to a substantial payout should she be terminated by the company, or terminate her own employment for "good reason" (including being required to relocate), within two years of the June 24, 2015, change in control event at Biomet.

34.     Zimmer Biomet refused to provide any severance pay or benefits to Barney upon her termination, reasoning that the change in control provision in Barney's Employment Agreement only applies if Barney is terminated by the company.

35.     Barney requested severance pay and benefits and requested an agreement from the company providing those benefits.  The company refused to provide a release agreement providing for the benefits and incorporating a release of claims from Barney.

36.     Several male former vice presidents of Zimmer Biomet had employment agreements with change in control severance provisions similar to Barney's, but when the male vice presidents initiated their own separations from the company without "good reason," the company paid them severance compensation and benefits.

37.     Each of these male comparators held positions of equivalence to Barney's in the organizational hierarchy at Zimmer Biomet, and each of them held positions where they exercised an equal level of skill, responsibility and efforts in their jobs as Barney did in hers.

38.     Zimmer Biomet treated similarly situated male employees more favorably than Barney, including but not limited to Lance Perry, Vice President and General Manager, Knee Construction, Will Boren, Vice President and General Manager, Connected Health, Stuart Kleopfer, President – Commercial Americas, Adam Johnson, Group President – Spine, Dental, Bone Healing, CMF and Thoracic, Jeff Grabow, Vice President – Spine, Dental, Bone Healing, CMF and Thoracic.[1]

---

[1] Plaintiffs in gender discrimination cases are not required to identify comparators by name in their complaints. *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n.3 (7th Cir. 2012) ("Rule 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Even the more demanding pleading requirements under *Iqbal* and *Twombly* do not require a plaintiff to identify specific comparators in a complaint.") However, rather than waste the Court's time with a Motion to Dismiss which incorrectly argues that naming comparators is required, Barney identifies the currently known comparators now, while reserving all rights to expand the list of comparators with the benefit of discovery.

39.     Zimmer Biomet has a male dominated culture with an atmosphere like an old boys' club.  Women are few and far between in senior leadership positions.  For example, the Operating Committee for the company has 12-13 members.  Since the merger, there have been only three females to serve on the Operating Committee, and two of them no longer work for the company. The sole remaining female member of the Operating Committee is European.

40.     When things go wrong, Zimmer Biomet's male dominated leadership team routinely cast blame on the few women in leadership. There was no working Woman's or Diversity Council or Leadership team within Zimmer Biomet.  Barney in fact volunteered to be on the leadership of such a group.  Fisher was tasked to get this effort initiated with the company. However, the need was never viewed to be a high enough priority to put resources against.

### III.     LEGAL ALLEGATIONS

### Count I:      Sex Discrimination in Pay, Equal Pay Act

41.     Barney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as if fully set forth here.

42.     Zimmer Biomet paid severance benefits[2] to similarly situated male employees performing equal work requiring similar skill, effort, and responsibilities performed under similar working conditions, when those male employees resigned without "good reason."

43.     For example, Zimmer Biomet paid severance benefits to Lance Perry, Vice President and General Manager, Knee Construction, Will Boren, Vice President and General Manager, Connected Health, Stuart Kleopfer, President – Commercial Americas, Adam Johnson, Group President – Spine, Dental, Bone Healing, CMF and Thoracic, Jeff Grabow, Vice President

---

[2] Severance pay may constitute "wages" under the Equal Pay Act. *See Rinaldi v. World Book, Inc.*, No. 00 CV 3573, 2002 U.S. Dist. LEXIS 1674, at *6-9 (N.D. Ill. Feb. 1, 2002).

– Spine, Dental, Bone Healing, CMF and Thoracic when each of them resigned without "good reason."

44.     Zimmer Biomet did not offer severance pay or benefits to Barney when she was constructively discharged, and therefore resigned.

45.     Zimmer Biomet did not offer a release agreement to Barney at any time.  Barney never refused to sign any release agreement from Zimmer Biomet.

46.     Zimmer Biomet refused to provide severance pay or benefits to Barney when she was constructively discharged, and therefore resigned.

47.     Zimmer Biomet refused Barney's repeated requests for severance pay and benefits after her employment ended.

48.     Zimmer Biomet refused Barney's repeated requests for a severance agreement, which would have included a release of legal claims.

49.     Zimmer Biomet willfully violated the Equal Pay Act by continuing to deny Barney's requests for severance pay and benefits, even after Barney informed Zimmer Biomet of the gender based disparity.

50.     As a result of Zimmer Biomet's willful violations of the Equal Pay Act, Barney has suffered, and continues to suffer, damages in lost wages, compensation, and benefits.

### Count II:      Sex Discrimination in Employment, Title VII

51.     Barney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as if fully set forth here.

52.     Barney is female and a member of a protected class.

53.     Zimmer Biomet knew that Barney was a member of a protected class.

54.     Zimmer Biomet singled Barney out because she is female and ordered her to make false misrepresentations of material fact to investors on a quarterly investment call.

55.     Zimmer Biomet singled Barney out because she is female and ordered her to terminate employees in her reporting structure under false pretenses.

56.     Zimmer Biomet treated Barney differently because she is female by making her and her organization the scapegoat for corporate problems not of her making.

57.     Barney suffered an adverse employment action when Zimmer Biomet constructively discharged her without cause.

58.     Barney suffered an adverse employment action when Zimmer Biomet refused to pay her severance.

59.     In denying Barney's requests for severance pay, Zimmer Biomet treated Barney differently, and to her detriment, as compared to similarly situated male employees.

60.     There is a causal connection between Barney's sex and Zimmer Biomet's constructive discharge of Barney.

61.     There is a causal connection between Barney's sex and Zimmer Biomet's refusal to pay her severance pay.

62.     Barney has suffered damages as a result of Zimmer Biomet's gender discrimination, including lost wages, compensation, benefits, and emotional distress.

### Count III:     Breach of Contract – Employment Agreement

63.     Barney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as if fully set forth here.

64.     Zimmer Biomet, in forcing Barney to terminate employees under false pretexts and to make material misrepresentations to investors, left Barney with no other choice but to resign.

65.     Repeatedly informing Barney that she would be required to relocate her family from Indiana to Switzerland left Barney with no other choice, but to resign.

66.     Barney was constructively discharged from Zimmer Biomet, without cause, effective November 11, 2016.

67.     The termination of Barney's employment also constitutes a termination by the Executive for Good Reason, within the meaning of Barney's employment agreement.

68.     The termination of Barney's employment occurred within two years following a "Change of Control," within the meaning of Barney's employment agreement.

69.     Zimmer Biomet breached Barney's employment agreement by failing to provide her "Change of Control Severance Benefit" resulting from Zimmer Biomet's constructive termination of her employment.

70.     Zimmer Biomet breached Barney's employment agreement by failing to provide her "Change of Control Severance Benefit" resulting from Barney's termination of employment for "Good Reason."

71.     Zimmer Biomet never provided Barney with a release agreement to sign in connection with her requests for Change in Control Severance Benefits.

72.     Barney has suffered damages as a result of Zimmer Biomet's breach.

**Count IV: Breach of Contract – Stock Incentive Plan**

73.     Barney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as if fully set forth here.

74.    The Stock Incentive Plan (Exhibit B) constitutes a contract between Barney and Zimmer Biomet.

75.    The Stock Incentive Plan defines "Retirement" as "termination of the employment of an employee with the Company on or after . . . the employee's 55th birthday if the employee has completed 10 years of service with the Company."

76.    Barney was constructively discharged after her 55th birthday.

77.    Zimmer Biomet terminated Barney's employment shortly before she would have reached 10 years of service with the Company, on May 19, 2017.

78.    Barney would have reached "Retirement" eligibility under the Stock Incentive Plan on May 19, 2017, if Zimmer Biomet had not constructively discharged her on November 11, 2016.

79.    The Stock Incentive Plan states that "[i]f an optionee shall cease to be employed by the Company by reason of Retirement after the optionee shall have been continuously employed by the Company for a period of at least one year after the granting of the option . . . all remaining unexercised portion(s) of the option shall immediately vest and become exercisable by the optionee and shall remain exercisable for the remainder of the option period set forth therein . . . ."

80.    Zimmer Biomet terminated Barney's stock options upon her termination of employment, instead of allowing them to immediately vest under the Stock Incentive Plan.

81.    Zimmer Biomet breached the Stock Incentive Plan by terminating Barney's stock options.

82.    Zimmer Biomet never provided Barney with a release agreement to sign in connection with her requests for Stock Incentive Plan Benefits.

83.     Barney has suffered damages as a result of Zimmer Biomet's breach.

### Count V.      Wrongful Constructive Discharge

84.     Barney hereby incorporates by reference all other paragraphs of this Third Amended Complaint as if fully set forth here.

85.     Zimmer Biomet created a hostile work environment by ordering Barney to assist in materially misleading investors, which could subject her to personal liability.

86.     Zimmer Biomet continued to create a hostile work environment by repeatedly demanding that Barney terminate employees under her supervision under a false pretext.

87.     Zimmer Biomet continued to create a hostile work environment by pressuring Barney about sales and product shipments during the FDA audit of the North Campus when by the end of September, all production had to be shut down in response to FDA findings.

88.     By October 28, 2016, the work conditions for Barney at Zimmer Biomet had become so intolerable that Barney had no other option, but to resign.  She had refused an order to mislead investors and commit securities fraud.  She had refused an order to terminate employees "for cause" when those employees had done nothing to warrant termination for cause.  She reasonably expected to be terminated for refusing to comply with these direct orders from the Chief Financial Officer and Chief Executive Officer.

89.     Barney had no other option but to comply with the orders of Zimmer Biomet's CEO, the highest level officer in the company, or to resign from employment before the upcoming investor call took place on October 31, 2016.

90.     Barney was constructively discharged when she was forced to either resign, or participate in a fraudulent scheme which could expose her to potential personal liability.

91.     Barney was constructively discharged for her refusal to assist in making material misrepresentations to investors violated public policy.

92.     Barney was constructively discharged for her refusal to relocate to Switzerland.

93.     Barney was constructively discharged for her refusal to comply with actions being taken during the FDA audit.

94.     Zimmer Biomet's own corporate response to the FDA clearly identifies Barney as a reason for the poor FDA results.  Zimmer Biomet clearly intended to terminate Barney's employment.

95.     Barney has suffered damages as a result of this wrongful discharge.

## IV.     RELIEF REQUESTED

Barney requests the following relief:

a.     All wages and other economic benefits lost as a result of Defendant's unlawful actions, including, but not limited to, back pay, front pay, severance pay, vested and unvested options due at her retirement at age 55 and 10 years of service and loss of future earning capacity;

b.     Compensatory damages;

c.     Liquidated damages;

d.     Punitive damages;

e.     Damages for emotional distress, mental anguish, and pain and suffering;

f.     All costs and reasonable attorney fees incurred in litigating this action;

g.     Pre-judgment and post-judgment interest; and

h.     Any and all other legal and/or equitable relief to which Barney is entitled.

Respectfully submitted,


*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
*Attorneys for Plaintiff Robin Barney*

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN  46205
Tel. 317.920.0400
Fax  317.920.0404
Kathleen@delaneylaw.net
aconklin@delaneylaw.net

## **JURY DEMAND**

Plaintiff, Robin Barney, by counsel, hereby demands a trial by jury on all issues so triable.

Respectfully submitted,


*/s/ Kathleen A. DeLaney*
Kathleen A. DeLaney (#18604-49)
Annavieve C. Conklin (#33875-32)
*Attorneys for Robin Barney*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 9th day of November, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CMECF system.

John D. LaDue
Stephen M. Judge
jkuehn@lck-law.com
sjudge@lck-law.com

Troy S. Brown
Michael L. Banks
Meredith E. Riccio
troy.brown@morganlewis.com
michael.banks@morganlewis.com
meredith.riccio@morganlewis.com

*/s/ Kathleen A. DeLaney*_____
Kathleen A. DeLaney

DELANEY & DELANEY LLC
3646 N. Washington Blvd.
Indianapolis, IN 46205