UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBIN BARNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:17-CV-616 JD |
| | ) |
| ZIMMER BIOMET HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Robin Barney resigned from her post as a senior vice president for Defendant Zimmer Biomet Holdings ("Zimmer"). Based on several events that occurred shortly before and after her resignation, Barney filed this lawsuit, alleging sex discrimination, breach of contract, and constructive discharge. [DE 27]¹ Zimmer has filed a partial motion to dismiss, seeking dismissal of Barney's contract and constructive discharge claims (Counts III-V). [DE 30] For the reasons stated herein, the Court will grant the motion.

**FACTUAL ALLEGATIONS**

Barney became senior vice president for operations for Biomet, Inc., in September 2008. In 2015, Biomet, Inc., merged with Zimmer Holdings, Inc., to become Zimmer Biomet Holdings, Inc. As a result of the merger, Barney became Zimmer's senior vice president of global operations and logistics. She served in that role until her resignation in late 2016.

Several distinct incidents precipitated Barney's resignation. First, around August 2016, Zimmer informed Barney that her position would be moved from Indiana to Switzerland by the end of 2017, and that this would require her to relocate. Eventually, Barney informed Zimmer

---

¹ The operative pleading is Barney's third amended complaint.

1

that she did not wish to relocate with the position. Second, around October 2016, Barney alleges that Zimmer's CFO demanded that she concoct a story to mislead Zimmer's investors about the cause of recent quarterly shortfalls. Barney refused this order, but she does not allege anything resulted from her refusal. Around this same time, Barney alleges that she faced pressure from Zimmer about sales and product shipments related to one of the company's facilities, even though production had already been shut down at that facility due to a Food and Drug Administration audit. On October 28, 2016, Barney alleges that Zimmer's CEO ordered her to make organizational changes that included terminating employees under a false pretext. Again, Barney refused to comply. In response, Barney alleges the CEO stated "he was not happy with her refusal, and that they would talk further about it." [DE 27 ¶ 22] Barney submitted her resignation that same day, giving two weeks' notice. She now claims that she had no choice but to resign in the face of these incidents; she alleges that, together, they constituted intolerable conditions, and she further wished to extricate herself from the potential securities fraud being committed by other executives.

Following her resignation, Barney alleges she requested severance benefits in accordance with the 2008 Employment Agreement (the "Agreement"), which governed her employment with Zimmer. Zimmer not only refused to pay Barney these benefits, but also terminated her stock options as provided in the Stock Incentive Plan (the "SIP") she had with the company.[2] This lawsuit followed.

---

[2] While Zimmer attached the Agreement and the SIP to its motion, Barney did not include them with the operative complaint (although she did attach them to prior pleadings [DE 1; DE 23]). Nonetheless, the Court may consider them without converting Zimmer's motion into one for summary judgment, because they are referred to in the complaint and central to Barney's claim. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009) (citations omitted). In addition, Barney does not challenge their authenticity. *See id.*

**STANDARD**

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

Zimmer seeks to dismiss Counts III-V of Barney's complaint. With regard to Barney's breach of contract claims (Counts III and IV), Zimmer argues that Barney has failed to allege that she satisfied the necessary conditions precedent to receive severance payments, and that her own allegations demonstrate that she did not qualify for the immediate vesting of her stock options. As for Barney's constructive discharge claim (Count V), Zimmer maintains that Barney's complaint contains insufficient allegations to support the notion that she had no choice

but to resign in the face of truly intolerable workplace conditions. As explained below, the Court finds Zimmer's arguments persuasive and will grant the motion.

1. **Breach of Contract**

Barney alleges that Zimmer breached the terms of the Agreement and the SIP by failing to provide her with certain severance benefits and terminating her stock options. In Indiana, it is well settled that "[t]o recover for a breach of contract, a plaintiff must prove that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007).[3] Neither of Barney's breach of contract theories can survive Zimmer's motion.

   *a.     Employment Agreement and Severance Benefits*

Barney's first claim for breach of contract refers to the severance benefits that fall under Section 9(e) of the Agreement, which provides enhanced payments should the executive (Barney) terminate the Agreement herself for "Good Reason" following a "Change of Control."[4] In either scenario, however, payment is conditioned upon the executive's signing and non-revocation of a release "in a form substantively identical in terms" to a sample document attached to the back of the Agreement. (Agreement ¶ 10(h)).

Zimmer argues that Barney has failed to make out a claim for breach of Section 9(e) because she has not alleged certain conditions precedent to the payment. Specifically, Zimmer maintains that Barney's resignation does not fall under any of the "Good Reason" provisions that establish severance payment eligibility, and that she never alleges to have executed a release

---

[3] Indiana law governs both documents. (Agreement ¶ 19; SIP § 20).

[4] Section 9(e) also provides for severance benefits should Zimmer terminate the executive without cause. Barney suggests that she may be able to proceed under this prong if her constructive discharge claim succeeds. [DE 32 at 5] But as discussed below, her constructive discharge claim will be dismissed, and so the Court will not consider this alternative theory.

4

form. [DE 31 at 11] Barney responds that she need not allege conditions precedent in order to adequately set forth a claim for breach of contract [DE 32 at 3], but that is not accurate. *See Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) ("[P]leading the performance of conditions precedent is necessary to state a cause of action for breach of contract ….").

Among the enumerated "Good Reasons" to support an executive's resignation is the "relocation of a [sic] Executive's primary work location more than 50 miles from the Executive's work location on the Effective Date, without the Executive's prior written consent." (Agreement ¶ 23). Barney's place of performance under the Agreement was at Zimmer's executive offices in Warsaw, Indiana. *Id.* ¶ 4. Around August 2016, Barney alleges that Zimmer's vice president of human resources informed her that "her job would be moved from Warsaw, Indiana to Switzerland, requiring her relocation by the end of 2017." [DE 27 ¶ 16] Barney argues that this sufficiently invokes the Agreement's definition of "Good Reason," and indeed it might but for an additional provision requiring Barney to "provide written notice to the Company of her intention to terminate her employment for Good Reason," specifying in reasonable detail the claimed circumstances giving rise to her decision, "within thirty days following the occurrence of any of the events set forth herein." (Agreement ¶ 23).

Barney ignores this condition both in her pleadings and in her opposition brief. Her complaint contains no allegations that she informed Zimmer in writing of her decision to resign for "Good Reason" within thirty days of when she was informed about the relocation or within thirty days of informing Zimmer that she would not move to Switzerland. She only alleges that she "later informed Zimmer … that she did not wish to relocate to Switzerland, and was left to conclude that her employment would therefore be terminated before the end of 2017 …." [DE 27 ¶ 18] But Barney did not decide to resign until October 28, 2016, and the only *written* notice she

references in her entire complaint is her resignation email dated that same day. *Id.* ¶ 25. Furthermore, Barney does not allege whether that email "specifie[d] in reasonable detail" the circumstances supporting her decision qualified as a termination for "Good Reason," as required by the Agreement. (Agreement ¶ 23).

Because Barney has not sufficiently alleged that she resigned for "Good Reason" to qualify for severance benefits under Section 9(e), she cannot claim that Zimmer breached the Agreement by not paying these benefits. *See Redfield*, 818 F.2d at 610 ("Our inspection of the amended complaint reveals that it contains no allegation, either general or specific, regarding the performance of all conditions precedent. Absent such an allegation, the amended complaint fails to state a cause of action for breach of the [contracts]."). Therefore, her breach of contract claim based on the Agreement's severance benefits provisions (Count III) will be dismissed, without prejudice.[5]

    b.    *Stock Incentive Plan*

Barney additionally claims that Zimmer breached the SIP by terminating her stock options upon her resignation, instead of allowing them to immediately vest pursuant to Section 7(b)(8). In relevant part, the SIP states:

> If an optionee shall cease to be employed by the Company *by reason of Retirement* after the optionee shall have been continuously employed by the Company for a period of at least one year after the granting of the option … all

---

[5] Zimmer's alternative argument, that Barney failed to execute the required release form, does not persuade the Court at this stage. Barney alleges that Zimmer "never provided [her] with a release agreement" and "refused to provide a release agreement" in connection with her requests for severance benefits. [DE 27 ¶¶ 35, 71] Zimmer cannot point to Barney's failure to sign a release (and thus avoid liability for its failure to pay severance benefits) where Barney has alleged that Zimmer impeded her efforts to comply with the Agreement's conditions. *See Maddox v. Wright*, 489 N.E.2d 133, 137 (Ind. Ct. App. 1986) ("It is well established that where the actions or conduct of one party to a contract prevent the other from performing his part, the other's non-performance will be excused."). But regardless, the possibility that Barney never received a release form does not overcome her failure to allege that she even qualified for the severance benefits she requested, as discussed above.

6

>remaining unexercised portion(s) of the option shall immediately vest and become exercisable by the optionee ….

(SIP § 7(b)(8)) (emphasis added). The SIP further defines "Retirement" as termination on or after "(i) the employee's 65th birthday or (ii) the employee's 55th birthday if the employee has completed 10 years of service with the Company." *Id.* § 2(v). Barney alleges that she resigned after turning fifty-five years old, but also admits that she had not served Zimmer for a full ten years at that time. [DE ¶¶ 31-32, 76-77][6] By her own allegations then, Barney's departure does not meet the SIP's definition of Retirement, and so she has effectively pled herself out of a cause of action for breach because Zimmer was under no obligation to allow her stock options to immediately vest via Section 7(b)(8). *See Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 847 (S.D. Ind. 2005) (A breach of contract claim should be dismissed "if there is no set of facts under which [defendant] could be found to have breached its contract with [plaintiff]."); *see also Vinson v. Vermilion Cnty., Ill.*, 776 F.3d 924, 929 (7th Cir. 2015) ("[A] plaintiff may plead herself out of court when she includes in her complaint facts that establish an impenetrable defense to her claims.").

Barney argues that she "would have remained employed at least through the end of 2017 … and would have become eligible for Retirement under the Stock Incentive Plan," but for her alleged wrongful constructive discharge. [DE 27 ¶ 78; DE 32 at 10] Not only is this theory purely speculative (she could have been terminated for any number of hypothetical reasons before reaching her ten-year work anniversary), but it highlights another flaw in her complaint: a failure to sufficiently plead causation and damages. "Under Indiana law, a plaintiff has the burden to plead and prove damages and that the breach of the contract was the cause in fact of

---

[6] Barney does not allege that she reached sixty-five years of age prior to her resignation.

the loss." *Perfect Flowers, Inc. v. Teleflora LLC*, No. 1:10-cv-1031, 2011 WL 2462224, at *7 (S.D. Ind. June 17, 2011); *see also Shepard v. State Auto Mut. Ins. Co.*, 463 F.3d 742, 744-45 (7th Cir. 2006) ("[D]amages cannot be based on mere speculation and conjecture."). Barney has not (and cannot) plead that Zimmer's termination of her stock options resulted in damages here; she was never entitled to immediate vesting of those options and so Zimmer did not breach the SIP by terminating them upon her resignation. *See Dorsey v. Shire Regenerative Med., Inc.*, Cause No. 1:13-cv-1583, 2014 WL 1725823, at *2 (S.D. Ind. Apr. 30, 2014) (dismissing breach of contract claim based on defendant's failure to pay retention bonus to plaintiff, because "[plaintiff] had to remain employed in good standing with [defendant] to receive his bonus, and no matter the reason, he did not because he was fired in October 2012."). The essence of Barney's argument is that her alleged constructive discharge cost her the stock options, but such tort theories do not arise from contract. *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 518 (Ind. 1993) ("It is axiomatic that tort obligations arise, not from an agreement between the parties, but by operation of law.").

Accordingly, Barney's claim for breach of contract based on the SIP's immediate vesting provision (Count IV) will be dismissed, with prejudice.

**2.    Constructive Discharge**

Finally, Barney levies a claim for wrongful constructive discharge based on her resignation. Barney alleges that she had no choice but to resign due to intolerable workplace conditions she experienced after refusing to mislead investors or to terminate employees under a false pretext.[7] To survive a motion to dismiss for failure to state a constructive discharge claim,

---

[7] Barney's opposition brief clarifies that her allegations about her potential relocation to Switzerland do not form the basis of her constructive discharge claim, but rather provide context and support for her claim for severance benefits. [DE 32 at 12]

Barney must allege two things in her complaint: (1) that she is entitled to bring a retaliatory discharge claim under an exception to the employment at will doctrine; and (2) that she was indeed constructively discharged. *Huckaby v. Jasper Cty. Sheriff's Office*, 928 N.E.2d 647, 2010 WL 2284246, at *2 (Ind. Ct. App. 2010) (citing *Frampton v. Cent. Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973)).

As to the first requirement, the parties do not dispute whether Barney served as an at-will employee, and in Indiana, employment at will is terminable at any time for "good reason, bad reason, or no reason at all." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016) (quoting *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007)). "The presumption of at-will employment is strong," and Indiana courts are "disinclined to adopt broad and ill-defined exceptions to the employment-at-will doctrine." *Huckaby*, 2010 WL 2284246, at *2 (citing *Orr. v. Westminster Village N., Inc.*, 689 N.E.2d 712, 717 (Ind. 1997)). Nonetheless, Indiana recognizes three narrow exceptions to the at-will doctrine: (1) when adequate independent consideration supports a contract; (2) when a clear statutory expression of a right or duty is contravened; and (3) when promissory estoppel applies. *Ogden v. Robertson*, 962 N.E.2d 134, 145 (Ind. Ct. App. 2012).

Barney seeks to invoke the second of these exceptions, which originates from the Supreme Court of Indiana's decision in *Frampton*, 297 N.E.2d 425. In *Frampton*, the plaintiff filed a claim for workers compensation, and his employer fired him for doing so. The court declared that "when an employee is discharged solely for exercising a statutorily conferred right[,] an exception to the general rule must be recognized." *Id.* at 428. Later, in *McClanahan v. Remington Freight Lines, Inc.*, the court expanded the public policy exception to include a "separate but tightly defined exception to the employment at will doctrine" when an employer discharges an employee for refusing to commit an illegal act for which the employee would be

9

personally liable. 517 N.E.2d 390, 393 (Ind. 1988). In that case, an at-will employee refused to drive his overweight truck through Illinois, fearing he would be personally liable for violating Illinois law. The trucker's refusal cost him his job. And relevant here, while *Frampton* and *McClanahan* both involved fired employees, a constructive discharge claim may also rest on an employee's involuntary resignation, rather than her firing, but only where the claim fits within the exception as recognized by those decisions. *Baker v. Tremco Inc.*, 917 N.E.2d 650, 655 (Ind. 2009) ("The constructive discharge doctrine acknowledges the fact that some employee resignations are involuntary and further prevents employers who wrongfully force an employee to resign to escape any sort of liability for their actions.").

Here, however, Barney's refusal to terminate employees at the CEO's behest does not implicate any of the facts or rationales of either *Frampton* or *McClanahan*, and thus it cannot serve as the basis for her constructive discharge claim. *See Huckaby*, 2010 WL 2284246, at **1-2 (affirming dismissal of plaintiff's constructive discharge claim where it did not relate to the exercise of a statutory right and did not arise out of a refusal to commit an illegal act or breach a statutorily-imposed duty); *see also Stocker v. Extendicare Health Servs., Inc.*, Cause No. 3:16-CV-69, 2017 WL 83753, at *3 (N.D. Ind. Jan. 10, 2017) ("Failure to demonstrate a statutory source for an alleged right or an imposed duty is grounds for dismissal."). While Barney felt it would not have been "ethical or truthful" to terminate employees under a false pretext [DE 27 ¶ 22], she does not allege whether or how any such termination would have been illegal.

Barney's only viable basis for a constructive discharge claim is that she resigned after refusing to mislead Zimmer's investors to avoid "being fired and possibly prosecuted for securities fraud." [DE 27 ¶ 28] So in order to pass muster, the complaint must contain allegations sufficient to satisfy the second constructive discharge requirement, that Barney actually suffered

a constructive discharge. A constructive discharge "occurs when the plaintiff shows that [she] was forced to resign because [her] working conditions, from the standpoint of the reasonable employee, had become unbearable." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009)).

The Seventh Circuit recognizes two forms of constructive discharge. "In the first form, an employee resigns due to alleged discriminatory harassment." *Chapin*, 621 F.3d 673, 679. Under this form, the plaintiff must show workplace conditions "even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Id.* (citations omitted).[8] The second form of constructive discharge occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated …." *EEOC v. Univ. of Chi. Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002). In this situation, if the plaintiff employee resigns, the employer's conduct may amount to constructive discharge. *Id.* Proceeding under this form, however, does not eliminate the need for the plaintiff to show that her working conditions had become intolerable. *Chapin*, 621 F.3d at 679 (citing *Pa. State Police*, 542 U.S. at 141). "And a working condition does not become intolerable or unbearable merely because a 'prospect of discharge lurks in the background.'" *Id.* (quoting *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004)).

---

[8] For example, the types of egregious conditions considered by the Seventh Circuit include the presence of a threat to a plaintiff's personal safety. *Chapin*, 621 F.3d at 679 (citing *Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir. 2009) (claim for constructive discharge possible where harassment includes repeated use of noose and implied threats of physical violence)).

Barney has failed to state a claim for constructive discharge. She has not made sufficient allegations that anyone at Zimmer led her to reasonably believe that she would be terminated for refusing to mislead investors (or for refusing to terminate employees, for that matter). All she alleges is that, after she refused to terminate employees, the CEO told her "he was not happy with her refusal, and that they would talk further about it," and that Zimmer terminated two other members of its leadership that same day. [DE 27 ¶¶ 22-23].[9] Not only do these scant observations have nothing to do with her refusal to mislead investors, but they likewise do not support a constructive discharge claim on their own. *See Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1065 (N.D. Ill. 2018) (dismissing plaintiff's Title VII constructive discharge claim where she made no allegation that anyone working for defendant told her she would be terminated).[10]

Moreover, Barney has not sufficiently alleged that her work environment was so intolerable as to withstand a Rule 12(b)(6) motion. The complaint describes a work environment where she faced demands to terminate employees under a false pretext and experienced pressure about sales and shipments. Even accepting these allegations as true, Barney's experience at Zimmer "simply does not represent anything sufficiently egregious to support a constructive

---

[9] In her opposition to the instant motion, Barney states that the "two other senior leaders … told her she was about to be fired." [DE 32 at 15] But this fact appears nowhere in her complaint, and so the Court will not consider it here. *Malone v. Securitas Sec. Servs.*, No. 13 C 8747, 2015 WL 5177549, at *2 (N.D. Ill. Sept. 3, 2015), *aff'd sub nom. Malone v. Securitas Sec. Servs. USA, Inc.*, 669 F. App'x 788 (7th Cir. 2016) ("Plaintiff may not attempt to cure deficiencies inherent in a complaint by asserting new facts for the first time in opposition to a motion to dismiss."); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("complaint may not be amended by the briefs in opposition to a motion to dismiss").

[10] Although *Parks* addressed constructive discharge under Title VII, "[b]ecause there is scant Indiana law on the issue of constructive discharge," Indiana courts "turn for guidance to the federal courts, which frequently address constructive discharge in the context of various employment discrimination claims." *Tony v. Elkhart Cty.*, 918 N.E.2d 363, 369 (Ind. Ct. App. 2009).

discharge claim (or that would satisfy even the less-demanding standard for a hostile work environment claim)." *Id.* (allegations that plaintiff "faced many technical issues with telecommuting, was disciplined by her supervisors more than necessary, and faced pushback about her job title and responsibilities" did not sufficiently state a constructive discharge claim); *cf. Alamo v. Bliss*, 864 F.3d 541, 550-51 (7th Cir. 2017) (plaintiff sufficiently stated a hostile work environment claim where he alleged two severe racial slurs directed at him along with other incidents of harassment by coworkers); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015) (plaintiff stated a claim for a hostile work environment when she alleged "uniquely bad treatment" of herself and her daughter based on their religion, including social shunning and being screamed at by co-workers).[11]

Barney's complaint "does not describe the type of pervasive and targeted negative treatment and hostility that would cause a reasonable person to feel that she must leave her place of employment." *Parks*, 318 F. Supp. 3d at 1065-66; *see also Chapin*, 621 F.3d at 679 (noting that "[o]ne threat and raised voices would not rise to the level of a hostile work environment," and therefore would not support a constructive discharge claim). Therefore Barney's claim for wrongful constructive discharge (Count V) will be dismissed, without prejudice.

## CONCLUSION

In sum, Barney has failed to adequately allege that Zimmer breached its Employment Agreement with her, or that Zimmer subjected her to a wrongful constructive discharge. Furthermore, by her own admissions, Barney resigned before becoming eligible for immediate

---

[11] Recall that "[a]lthough a plaintiff may establish a hostile work environment by showing that she has been subjected to severe or pervasive harassment, a 'further showing' is necessary to establish a constructive discharge." *Parks*, 318 F. Supp. 3d at 1065 n.5 (citing *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 639 (7th Cir. 2009)).

13

vesting of her stock options under the Stock Incentive Plan, and so she cannot claim that Zimmer breached the Plan's terms. As a result, the Court **GRANTS** Zimmer's partial motion to dismiss. [DE 30] The Court hereby **DISMISSES** Counts III and V, without prejudice, and **DISMISSES** Count IV, with prejudice.

    SO ORDERED.

    ENTERED: November 26, 2018

                                          /s/ JON E. DEGUILIO
                                          Judge
                                          United States District Court