UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBIN BARNEY, | |
| Plaintiff, | |
| v. | CASE NO. 3:17-CV-616-JD-MGG |
| ZIMMER BIOMET HOLDINGS, INC., | |
| Defendant. | |

## OPINION AND ORDER

Pending and ripe before the Court are Plaintiff Robin Barney's Renewed Motion to Compel [DE 103] and three related motions to seal [DE 105, DE 111, DE 115] asking the Court to maintain portions of the briefing of Barney's motion to compel and certain related exhibits under seal.

## I.   RELEVANT BACKGROUND

After a lengthy pleadings process, Barney's claims against Defendant, Zimmer Biomet Holdings, Inc. ("Zimmer Biomet"), were finalized on April 8, 2020, when this Court granted Zimmer Biomet's most recent motion to dismiss Barney's state law constructive discharge claim. [DE 118]. Barney's active claims are now limited to her gender discrimination claims under the Equal Pay Act, 29 U.S.C. § 206(d) [DE 27 at 7–8] and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e [DE 27 at 8–9]. Barney's gender discrimination claims arise from circumstances that allegedly led her to resign as Zimmer Biomet's Senior Vice President of Global Operations and Logistics in November 2016. As relevant here, Barney's Equal Pay Act claim alleges that Zimmer

Biomet paid severance benefits to similarly situated male employees who either resigned at their own initiative or were terminated by the company, but refused to pay her severance benefits despite the alleged constructive discharge that led her to resign. [DE 27 at 7–8]. In her Title VII claim, Barney pleads that Zimmer Biomet treated her differently because of her gender when it allegedly ordered her to make false representations of material fact to investors on a 2016 Q3 investor call and to terminate employees under false pretenses, while also making her and her organization a scapegoat for corporate problems. Barney contends that she would have been fired had she not complied with these orders even though she believed she would have been criminally liable had she complied. Thus, Barney chose to resign to avoid potential criminal liability.

The parties began discovery related to Barney's discrimination claims early in this case before the pleadings were finalized and even before a Rule 16(b) Scheduling Order was entered. Barney served interrogatories ("ROGs") and requests for production of documents ("RFPs") on Zimmer Biomet on November 16, 2017. On December 18, 2017, Zimmer Biomet served its initial responses and objections [DE 104-1, DE 106-1], but supplemented its production with additional documents in at least ten batches between January 20, 2018, and January 14, 2019. Despite exchanges between counsel regarding what Barney perceived to be deficiencies in Zimmer Biomet's production, the parties did not resolve their disagreement over Zimmer Biomet's Answers to ROG Nos. 7 & 8 and its Responses to RFP Nos. 5, 13, & 15, which all seek information intended to help Barney identify potential comparators.

Between February 27, 2018, and April 2, 2018, Barney also noticed five non-party, current or former Zimmer Biomet executives of depositions to occur between May 8, 2018, and August 22, 2018. [DE 104-2 at 1, 6, 10, 14, 20]. The deposition notices were accompanied by subpoenas duces tecum seeking copies of each deponent's employment-related agreements with Zimmer Biomet or its predecessor companies. Two of the executives were deposed in the spring of 2018, but both refused to answer certain questions on advice of counsel citing the "scope" of the questions. Neither produced all the agreements requested by subpoena. The depositions of the remaining three non-party executives were never scheduled due to stays of discovery. None of their employment-related agreements have been produced in response to the subpoenas either.

After reaching an impasse as to the completeness of Zimmer Biomet's Answers to ROGs 7 & 8, its Responses to RFPs 5, 13, & 15, the unanswered deposition questions, and the deponents' responses to the subpoenas, Barney filed her original Motion to Compel [DE 36] on June 19, 2018, seeking the Court's assistance in resolving these discovery disputes. That motion was denied without prejudice as the Court stayed all proceedings in this case pending the lifting of a stay in a parallel securities case.[1] Discovery resumed after the stay was lifted on December 18, 2018, and a Rule 16(b) Scheduling Order was then entered by this Court on June 10, 2019.

---

[1] *Shah v. Zimmer Biomet Holdings,* Case No. 3:16-cv-815-PPS

In the meantime, Barney attempted to reassert her state law constructive discharge claim through a lengthy and complicated procedural journey that ultimately led Zimmer Biomet, on August 26, 2019, to file another motion to dismiss the state law constructive discharge claim. While waiting for the motion to dismiss to be resolved, discovery continued. Counsel reopened discussion in October 2019 regarding the issues arising from the non-party depositions but could not reach agreement as to how to proceed. Still at an impasse over the same discovery disputes raised in her original motion to compel, Barney filed the instant Renewed Motion to Compel on October 11, 2019. Shortly thereafter, discovery was stayed again—this time pending resolution of Zimmer Biomet's motion to dismiss.

As part of the stay order, the parties were directed to file a joint status report, "informing the Court of the status of discovery and the pending motions," upon lifting of the stay. [DE 113 at 2–3]. The stay was automatically lifted on April 8, 2020, when the Court issued its order dismissing Barney's constructive discharge claim. In their timely Joint Status Report, the parties revealed that the discovery disputes raised six months earlier in Barney's Renewed Motion to Compel—and almost two years ago in Barney's original motion to compel—remain unresolved in their totality. Apparently, neither the passage of time in conjuction with the ongoing discovery process, nor the dismissal of Barney's state law constructive discharge claim facilitated any agreement between the parties regarding these discovery disputes to which the Court shall now turn its attention.

## II.   ANALYSIS

Of course, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When addressing motions to compel filed under Fed. R. Civ. P. 37(a), the court has broad discretion and may deny discovery to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. *See* Fed. R. Civ. P. 26(c); *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495–96 (7th Cir. 1996). "[A] district court should independently determine the proper course of discovery based upon the arguments of the parties." *Gile*, 95 F.3d at 496.

In discovery, what is relevant includes more than what is admissible at trial. Instead, relevant matter includes "anything that appears reasonably calculated to lead the discovery of admissible evidence." *Barker v. Life Ins. Co. of N.Am.*, 265 F.R.D. 389, 393 (S.D. Ind. 2009 (internal citation omitted). Given the liberal scope of discovery under Fed. R. Civ. P. 26(b), "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Gingerich v. City of Elkhart Prob. Dep't*, 273, F.R.D. 532, 536 (N.D. Ind. 2011) (internal citations omitted). Nevertheless, "the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant." *United States v. Lake County Bd. of Comm'rs*, No. 2:04 CV 415, 2006 WL 978882, at *1 (N.D. Ind. Apr. 7, 2006) (internal quotation omitted); *see also United States v. Farley*, 11 F.3d 1385, 1390 (7th Cir. 1993) ("Since the documents at issue are not relevant to the controversy before us, Farley cannot, as a matter of law,

5

make a showing of need."); *Greenbank v. Great Am. Assurance Co.*, 2019 WL 6522885, at *3 (S.D. Ind. Dec. 4. 2019) ("A party moving to compel production carries the initial burden of establishing, *with specificity*, that the requested documents are relevant." (emphasis in original)).

Here, the parties disagree as to the relevance of all the disputed discovery requests. Moreover, Zimmer Biomet contends that Barney's requests amount to an improper fishing expedition outside the scope of her claims intended to harass the non-parties involved, especially one of the non-party deponents, David Dvorak, who was Zimmer Biomet's Chief Executive Officer when Barney resigned. Nevertheless, Barney contends that the discovery matters at issue seek comparator evidence and other information related to the alleged constructive discharge, both of which she argues are central to her discrimination claims. Additionally, Barney contends that the requested information could reveal evidence of Zimmer Biomet's or the deponents' credibility and biases. Each discovery dispute will be addressed in turn.

### A.    Written Discovery Requests

Through Interrogatory Nos. 7 & 8 and Requests for Production 5, 13, & 15, Barney seeks information to help identify potential comparators. Notably, no party disputes that information about potential comparators is relevant and discoverable as to Barney's discrimination claims. *See Assaf v. OSF Healthcare Sys.*, 11-4108, 2014 WL 321860, at *3 (C.D. Ill. 2014). Indeed, to establish her Equal Pay Act claim, Barney will have to show that (1) Zimmer Biomet paid different wages to employees of the opposite sex; (2) those employees performed work requiring equal skill, effort, and

responsibility; and (3) those employees have similar working conditions. *See, e.g., Wolf v. Nw. Ind. Symphony Society*, 250 F.3d 1136, 1144 (7th Cir. 2001). The similarly-situated analysis is also elemental to Barney's Title VII disparate treatment claim, which requires a *prima facie* showing of discrimination including evidence that (1) she was a member of a protected class; (2) her job performance met Zimmer Biomet's legitimate expectations; (3) she suffered an adverse employment action; and (4) Zimmer Biomet treated similarly-situated persons not in a protected class more favorably. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). As the parties about what variables define employees similarly situated to Barney, they now ask the Court to determine the extent to which the information sought through Barney's ROGs 7 & 8 and RFPs 5, 13, & 15 is relevant, proportional, and discoverable related to likely comparators.

Barney has narrowed the scope of her original written requests as reflected in the final prayer for relief in her reply brief related to the instant Renewed Motion to Compel. Barney's current, narrowed requests are more consistent with the parties' efforts to resolve their discovery disputes before the motions to compel were filed. Any distinctions will be clarified as necessary in the discussions below. Despite the narrowing of her requests, Barney still complains that Zimmer Biomet has withheld responsive information based largely upon its own assessment of who qualifies as legitimate comparators.

Zimmer Biomet, on the other hand, contends that Barney's current narrowed requests are not consistent with the parties' agreed scope of comparator discovery and

that she has improperly broadened her requests through the Renewed Motion to Compel. Regardless, Zimmer Biomet argues that Barney has received "all comparator discovery to which she is entitled; namely former employees of Zimmer Biomet who were similarly situated to Barney and who separated from the company between June 24, 2015, and June 24, 2017." [DE 110 at 28].

Yet the ultimate decision as to whether a comparator is similarly situated for purposes of discrimination claims is a question for the fact-finder. *Reed v. Freedom Mortgage Corp.*, 869 F.3d 543, 549 (7th Cir. 2017). Therefore, no employer can unilaterally decide who qualifies as similarly situated employees. Moreover, plaintiffs like Barney are entitled to explore information during discovery to prove who her legitimate comparators are or to discover additional potential comparators. *See Vajner v. City of Lake Station*, No. 2:09-cv-245, 2010 WL 4193030, at *1 (N.D. Ind. Oct. 18, 2010) ("In the context of employment discrimination cases, the scope of discovery is particularly broad because 'an employer's general practices are relevant even when a plaintiff is asserting an individual claim for disparate treatment.'").

Here, Zimmer Biomet has defined the scope of "similarly situated employees" itself and limited its production of responsive information in keeping with that definition. More specifically, in a letter to Barney's counsel dated February 7, 2018, Zimmer Biomet defined "the scope of Plaintiff's purported comparators" related to her severance-based claims as

> individuals Plaintiff has identified as purported comparators in her Third Amended Complaint or in her responses to Defendant's Interrogatory

> Numbers 17 or 23[2], and former executive-level employees, if any, who received similar Change in Control benefits to Plaintiff, as identified in Defendant's SEC filings[3].

[DE 106-4 at 3]. Zimmer Biomet then identified those individuals as Lance Perry, Former Vice President and General Manager, Knee Construction; Wil Boren, Former Vice President and General Manager, Connected Health; Stuart Kleopfer, Former Vice President of Commercial Americas; Adam Johnson, Former Group President of Spine, Dental, Bone Healing, CMF, and Thoracic; and Jeff Grabow, Former Vice President of Spine, Dental, Bone Healing, CMF, and Thoracic. [DE 106-4 at 3–4]. Zimmer Biomet then agreed to search for and produce responsive documents related to these individuals only without conceding their status as legitimate comparators. [DE 106-4 at 4]. However, by limiting their search and production in this way, Zimmer Biomet has precluded Barney from discovering additional potential comparators that she could not identify herself. Such limitation is inconsistent with liberal scope of discovery authorized by Fed. R. Civ. P. 26(b) and particularly critical in employment discrimination claims like Barney's. *See Vajner*, 2010 WL 4193030, at *1. With that said, the scope of comparator discovery is not unlimited.

---

[2] In her Third Amended Complaint, Barney explicitly identified Lance Perry, Wil Boren, Stuart Kleopfer, Adam Johnson, and Jeff Grabow as purported comparators. [DE 27 at 6, ¶ 38]. Barney also alleged that this was not an exclusive list of purported comparators. [DE 27 at 6, ¶ 38]. Barney's Interrogatory Responses are not part of the record; however, in counsel's February 7, 2018, letter, Zimmer Biomet reports that Barney identified the same five individuals as purported comparators in her Interrogatory Responses. [DE 106-4 at 3 n.1].

[3] In the February 7, 2018, letter, Zimmer Biomet's counsel indicates that Wil Boren, Stuart Kleopfer, and Adam Johnson were identified in the company's SEC filings as former Zimmer Biomet executive-level employees with Change in Control benefits similar to Barney's. [DE 106-4 at 3 n.2]. Counsel also reports that Dan Florin and Dan Williamson were entitled to Change in Control benefits like Barney's but have not received severance benefits because they remain employed by Zimmer Biomet. [DE 106-4 at 3 n.2].

The purpose of the "similarly situated" requirement in both Equal Pay Act and Title VII cases is to isolate other variables that may account for differing treatment. *Silverman v. Bd. of Educ. of City of Chicago*, 637 F.3d 729, 742 (7th Cir. 2011), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). "A court must look at all relevant factors, the number of which depends on the context of the case." *Id.* (internal quotations omitted).

Normally, comparators are similarly situated if they shared a common supervisor with the plaintiff, were subject to the same standards as the plaintiff, and "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404–05 (7th Cir. 2007). Yet courts should apply a "common-sense" factual inquiry when determining which comparators meet the similarly situated requirement. *Id.* at 405. The inquiry "is not an unyielding, inflexible requirement that requires near one-to-one mapping between employees—distinctions can always be found . . . ." *Id.* "[T]he inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination . . . ." *Id.* For instance, material factors to consider in identifying similarly situated employees in a

10

severance case "may include the positions held, policies or plans in effect, the decisionmakers, and the timing of the separations . . . ." *Houston v. Easton Area Sch. Dist.,* 355 F. App'x 651, 654–55 (3d Cir. 2009).

Barney's claims here are based, in large part, on the severance terms in her relevant employment contract. Barney became Senior Vice President of Operations for Biomet, Inc. on September 2, 2008. When Biomet merged with Zimmer Holdings, Inc. on June 24, 2015, Barney became Zimmer Biomet's Senior Vice President of Global Operations and Logistics. Barney's employment agreement with Zimmer Biomet included a change in control ("CIC") provision that entitled her to severance benefits if she were terminated for any reason other than cause, or if she terminated her own employment for good reason, within two years of the merger. [DE 23-1 at 7]. Barney alleges that she was improperly denied severance benefits after her resignation from Zimmer Biomet in the fall of 2016 because she is female. Barney alleges that she resigned to avoid being terminated for refusing to commit an illegal act (*i.e.*, lying on an investor call). In other words, Barney contends that she was constructively discharged, which is an actionable adverse employment action under Title VII. *See Chapin v. Fort-Rohr Motors, Inc.,* 621 F.3d 673, 679 (7th Cir. 2010).

Based on these allegations, key factors to consider in identifying potential comparators similarly situated to Barney would include positions held to assure sufficient commonality in job expectations and applicable severance provisions to allow comparison of the terms of those provisions. Another key material factor would be the timing of the comparators' severance decision as related to Barney's departure because

Barney's severance benefit was directly tied to the two-year period immediately following the companies' merger. Additionally, similar timing of any potential comparators' severance benefit decisions would ensure common decisionmakers and corporate policies were at play in Zimmer Biomet's allegedly discriminatory decisions.

Zimmer Biomet's definition of potential comparators as "former executive-level employees, if any, who received similar Change in Control benefits to Plaintiff, as identified in Defendant's SEC filings" properly accounts for some of these key variables. [*See* DE 106-4 at 3].For instance, limiting comparator discovery to executive-level employees like Barney reasonably ensures that the potential comparators are subject to the similar supervisory structure, performance expectations, and job tasks. However, evidence of Zimmer Biomet's approach to granting severance benefits to female executives versus male executives—at the heart of Barney's discrimination claims— could arise from conduct related to a variety of employment agreements, not just those including a CIC provision like Barney's agreement did. Therefore, limiting Barney's comparator discovery to only individuals with severance benefits provided through a CIC provision is excessive. Similarly, the circumstances surrounding the departures of any executive-level employee could reasonably generate comparator information relevant to the alleged demands from Zimmer Biomet that led Barney to resign before being terminated even if the other separated employees had no agreement providing for severance benefits.

Furthermore, defining the relevant time for comparator departures consistent with the two-year, post-merger limit to Barney's severance benefits ensures certain

commonalities of circumstances. However, Barney's direct supervisor, CEO Dvorak, separated from Zimmer Biomet effective July 11, 2017, shortly after that two-year window closed. Given CEO Dvorak's supervisory role over Barney, expanding the temporal limit for comparator discovery through his departure is reasonable to mitigate against differences in supervisors among comparators.

With information in these categories, Barney can assess whether sufficient commonalities exist between herself and potential comparators to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination as to her severance benefits and her alleged constructive discharge. *See Humphries*, 474 F.3d at 405. Therefore, for purposes of discovery as to Barney's gender discrimination claims, a proper scope of comparator discovery would include executive-level Zimmer Biomet employees who separated from the company between June 24, 2015, and July 11, 2017, regardless of formal title or any severance-related provision.

### 1. Interrogatory Nos. 7 & 8

When first propounded, Barney's ROGs 7 & 8 sought information about "any and all persons who received [or were denied] severance benefits from Zimmer Biomet from June 24, 2015, to June 24, 2017 . . . ." [DE 106-1 at 9–10]. Thus, it was overbroad in that it sought identification of individuals beyond the scope of executive-level employees. In fact, this overbreadth was addressed by the parties before turning to the Court for assistance. In an email to Barney's counsel dated May 29, 2018, Zimmer Biomet's counsel confirmed that he had agreed to work with Zimmer Biomet to

"identify all VP-level or above Zimmer Biomet U.S. employees who left the company between June 1, 2015, and June 30, 2017" in response to ROGs 7 & 8. [DE 104-5 at 1]. Zimmer Biomet's counsel stated in the same email that the information would be available by early June 2018, after which counsel could discuss additional discovery that might be appropriate as to the newly identified potential comparators. [DE 104-5 at 1]. Barney contends that Zimmer Biomet never followed through on this promise.

Despite the parties' apparent agreement to narrow the scope of the overbroad original ROGs 7 & 8, Barney's instant Renewed Motion asked the Court to compel Zimmer Biomet to produce answers to the broader request to "identify any individuals who received severance benefits . . . or who were told that they were ineligible to receive such benefits . . . ." [DE 104 at 19]. Understandably, Zimmer Biomet's response brief focused upon Barney's apparent reneging on her previous agreement. Without explanation, however, Barney's subsequent reply brief only asked for an order compelling Zimmer Biomet to produce complete, verified Interrogatory responses to ROGs 7 & 8 consistent with the narrowed scope confirmed in Zimmer Biomet's May 29, 2018, email. [*See* DE 114 at 14–15].

Just as Zimmer Biomet wants Barney held to the narrowed scope of ROGs 7 & 8 negotiated by the parties in May 2018, Zimmer Biomet should be held accountable for producing information responsive to those narrowed requests. Zimmer Biomet indicates that it produced severance-related information for two additional former executives, Rex White and Richard Castenada, on June 15, 2018. The parties agree that severance information has already been produced as to eight individuals: Barney

14

herself, Lance Perry, Stuart Kleopfer, Jeff Grabow, Wil Boren, Rex White, Adam Johnson, and Richard Castenada. While this effectively identifies them as executive-level employees who left the company in the relevant time period, it does not verify that this is an exhaustive list of such executive-level departures. Therefore, Zimmer Biomet must now produce a responsive answer that identifies all such individuals in the narrowed scope to which it agreed without narrowing that scope further based on its own definition of what constitutes a comparator in this case.

### 2. RFPs 5, 13, & 15

During negotiations between the parties in early 2018, Barney also agreed to narrow the scope of RFPs 5 & 13, which respectively seek information as to Zimmer Biomet's decisions on the severance requests of executive-level employees and the agreements[4] providing for severance benefits to executive-level employees. [DE 104-4 at 3, 5–6]. Barney contends that Zimmer Biomet has unilaterally withheld responsive information on these requests based on its own definition of comparators, as discussed above. Zimmer Biomet shall now supplement its responses to Barney's RFPs 5 & 13 with responsive documents that fall into the scope of relevant comparator discovery defined above. If no further responsive information exists, Zimmer Biomet shall alternatively produce an affidavit or other verified response confirming that fact.

---

[4] Barney clarified her reference to "employment agreement" made in her original RFP 13 in her counsel's letter dated January 26, 2018, as "any written agreement between Zimmer and an executive-level employee which provides for a monetary or other benefit at the end of an employee's employment." [DE 104-4 at 6]. The Court incorporates this clarification into its more succinct reference to "employment agreements providing for severance benefits."

Through RFP 15, Barney seeks information related to severance pay for 13 enumerated individuals that Barney believes may be legitimate comparators. [DE 104-1 at 12–13]. As already noted, Zimmer Biomet produced such information for seven of those individuals, including Barney herself. Zimmer Biomet properly withheld the information as to four individuals who remain employed by Zimmer Biomet, a point Barney does not challenge. However, Barney still seeks responsive information regarding the remaining two individuals, Former CEO Dvorak and David Lino.

As to Former CEO Dvorak, Zimmer Biomet has produced some information in response to Barney's discovery requests generally. Additionally, Dvorak sat for a five-hour deposition in May of 2018. Zimmer Biomet, however, has withheld any further information arguing that it is irrelevant here because Dvorak is not and cannot be a comparator to Barney in this case. Zimmer Biomet also objects to Barney's requests for further personal and confidential information from and about Dvorak arguing that they amount to a fishing expedition intended to harass Dvorak.

Barney, on the other hand, argues that Dvorak could be a legitimate comparator and that the determination of his status as a comparator is a task reserved for the fact-finder, not Zimmer Biomet. Indeed, this same argument is the primary focus of the parties' dispute over Dvorak's deposition testimony and his response to the subpoena duces tecum served upon him, which will be addressed fully in subsequent sections of this Opinion and Order. Suffice it to say, as to this matter, Dvorak is not and cannot be a potential comparator. Therefore, Zimmer Biomet need not supplement its response to Barney's RFP 15 as to Dvorak beyond any supplementation ordered below.

16

However, Barney still seeks RFP 15 severance pay information regarding David Lino.[5] Zimmer Biomet contends that there is no basis for David Lino as a potential comparator but did not develop an argument supporting its position. Undeveloped arguments are considered waived. *See Gross v. Town of Cicero*, 619 F.3d 697, 704-05 (7th Cir. 2010). Accordingly, any argument as to the discoverability of David Lino's severance pay information requested in Barney's RFP 15 is waived. Zimmer Biomet must now supplement its response to RFP 15 with responsive documents regarding David Lino.

### B.    Additional Deposition Testimony

On May 8, 2018, Barney deposed Zimmer Biomet's Former CEO Dvorak for five hours. Dave Kunz, Zimmer Biomet's Senior Vice President for Global Quality and Regulatory Affairs was then deposed on June 6, 2018. Both Dvorak and Kunz were represented at their depositions by Zimmer Biomet's attorney in this case, Troy Brown, who advised them not to answer certain questions given their scope.



---

[5] Zimmer Biomet suggested that Barney abandoned her request for Lino information but without basis as her Renewed Motion explicitly complains that Zimmer Biomet "has not produced documents related to . . . David Lino." [DE 104 at 23]. Barney also reiterates in her reply brief that she seeks the remaining responsive documents related to David Lino. [DE 114 at 15].

███████ Through her Renewed Motion, Barney asks the Court to require both depositions to be reconvened to answer these unanswered questions.

As a preliminary matter, Barney suggests that Attorney Brown improperly instructed Dvorak and Kunz not to answer the questions at issue here citing Fed. R. Civ. P. 30(c)(2), which only authorizes such an instruction "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Rather than respond to Barney's Rule 30(c)(2) procedural argument, Zimmer Biomet seeks a protective order prohibiting the reconvening of both depositions arguing that the unanswered questions seek information that is irrelevant to Barney's gender discrimination claims. Further, Zimmer Biomet argues that the unanswered questions are purely harassing in nature because they seek irrelevant, personal and confidential information.

Regardless of these arguments, Zimmer Biomet has not demonstrated that any of the Rule 30(c)(2) circumstances that could justify Attorney Brown's instruction to Dvorak and Kunz applied. Zimmer Biomet has not argued that any of the questions at issue implicated privilege worthy of preservation. This Court has not issued any previous order as to the subject of the questions at issue. And no formal Rule 30(d)(3) motion was filed seeking termination of or limitation on the depositions based on bad faith conduct "that unreasonably annoys, embarrasses, or oppresses the deponent or party." Without more, Attorney Brown's instruction to Dvorak and Kunz was likely improper.

However, this Court disfavors resolution of parties' disputes on technicalities rather than the merits. As such, determining the relevance of the unanswered questions

18

to Barney's claims is necessary to ensure a just outcome in this case. *See* Fed. R. Civ. P. 1.

Important to that consideration will be the allegedly harassing quality of the questions.

### 1.      Dvorak

The primary issue raised by the parties in their dispute over the relevance of the

actual circumstances of Dvorak's separation from Zimmer Biomet and his post-

employment compensation and obligations is whether Dvorak, as the former CEO,

could be a legitimate comparator for Barney in relation to her discrimination claims. If

Dvorak could be a comparator, then the circumstances of his separation and his post-

employment compensation and obligations would undeniably be relevant to Barney's

claims. After all, key points of comparison between Barney and Dvorak in the similarly

situated analysis would be the circumstances of their separations from the Company

and the severance decisions for each of them as departed executive-level employees.

But Barney has overestimated Dvorak's potential as a legitimate comparator.

As CEO, Dvorak was one of a kind, different from all other Zimmer Biomet

employees. The differences between the duties and responsibilities of any corporate

CEO compared to any Senior VP are considerable. And here, Barney and Dvorak were

not even supervised by the same person. Instead, Dvorak was Barney's supervisor

while Dvorak was only accountable to the Board of Directors. *See Kuttner v. Zaruba*, 819

F.3d 970, 974 (7th Cir. 2016) (stating that valid comparators typically "dealt with the

same supervisor, were subject to the same standards, and had engaged in similar

conduct without such differentiating or mitigating circumstances as would distinguish

their conduct or the employer's treatment of them."); *see also Humphries*, 474 F.3d at 404–

19

05. Thus, any commonality between the severance provisions in Barney's and Dvorak's relevant employment agreements[6] is mitigated because of the substantial differences in duties, responsibilities, and supervisors. *See Humphries*, 474 F.3d at 404–05. Nevertheless, there are other reasons why some of the information Barney seeks through the unanswered deposition questions could be relevant to her claims.

### a.      Actual Circumstances of Dvorak's Departure

Barney bases her Title VII disparate treatment claims on her alleged constructive discharge, which she asserts constitutes the adverse employment action central to her Title VII claim. *See Coleman*, 667 F.3d at 845; *Chapin*, 621 F.3d at 679. In employment discrimination cases, constructive discharge occurs "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Chapin*, 621 F.3d at 679. The dismissal of Barney's state law constructive discharge claim does not resolve the factual question of whether Barney resigned because of a reasonable belief that she would be terminated because of her refusal to comply with the direct orders of both Dvorak and other senior executives like herself. As such, the actual circumstances of Dvorak's separation from Zimmer Biomet could offer useful insight as to the culture and priorities of Zimmer Biomet that would have affected the orders given to Barney during his tenure as CEO.

Zimmer Biomet, on the other hand, contends that Dvorak need not answer further deposition questions regarding the circumstances of his departure because ███

---

[6] ██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
           [DE 116 at 7–8].

██████████████ a Zimmer Biomet press release, which was publicly filed with the SEC, reported that he "stepped down." [*See* DE 106-2 at 9]. However, the press release does not address all the relevant issues surrounding Dvorak's departure. A key to resolving Barney's disparate treatment claims will be a determination of whether she was voluntarily or involuntarily terminated because the CIC provision in her employment agreement limits her severance benefits if she voluntarily resigns without good reason. [DE 23-1 at 7]. Discovery into the circumstances that led Dvorak to "step down"—whether voluntarily or involuntarily—is relevant to understanding the corporate expectations that would have affected both his and Barney's departure.

Additionally, the voluntariness of Dvorak's separation goes to the credibility of Zimmer Biomet in its SEC filings—an issue relevant to Barney's claim that she was ordered to "concoct a story" for investors as to poor returns in the third quarter of 2016. For instance, the vague phrase "stepping down" in Zimmer Biomet's SEC filing gives no clear indication of the voluntariness of Dvorak's departure. ████████████████ ████████████████████████████████████████████████ ███████████████████████ [*See* DE 116 at 10 (citing DE 106-7 at 2). Such conflicting language brings into question Zimmer Biomet's accuracy in using vague language about Dvorak's departure in its SEC filing and could show a propensity to support other misrepresentations like those allegedly demanded of Barney. As such, Barney's eleven unanswered questions as to the actual circumstances of Dvorak's separation address issues relevant to Barney's claims and should be answered. [*See* DE 104 at 7–8].

### b. Dvorak's Post-Employment Compensation from and Obligations to Zimmer Biomet

The relevance of Dvorak's post-employment compensation from and obligations to Zimmer Biomet to Barney's claims is less obvious. First, Barney contends that this information is relevant to determining whether Dvorak is a legitimate comparator—a less than persuasive argument as discussed above. Second, Barney argues that the terms of Dvorak's post-employment relationship with Zimmer Biomet are relevant to his bias. Barney suggests that any compensation, especially any compensation related to Dvorak's preparation for participation in this litigation, could establish loyalties to Zimmer Biomet that taint his testimony. Regardless of whether post-employment compensation can or cannot establish such bias, Barney is entitled to test the reliability of any witness. *Cf. Digan v. Euro-American Brands, LLC,* No. 10 C 799, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012)* ("[Plaintiff] is entitled to the information to prepare for possible cross-examination.").

With that said, Zimmer Biomet has already produced certain information about Dvorak's post-employment compensation and obligations. ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████[7] ████████████████████████████████ Moreover, Zimmer Biomet contends that the fact that Dvorak, a departing CEO of a publicly traded

---

[7] ████████████████████████████████████████ ████████████████████ [DE 112 at 25 n.19].

company, was compensated following his departure is publicly available as required for publicly traded companies. Barney offers nothing to suggest that the information already available to her is insufficient to test Dvorak's biases on cross-examination. Without more, the Court is persuaded that requiring Dvorak to answer further questions about his post-employment compensation from and obligations to Zimmer Biomet would be unnecessarily cumulative and harassing.

### c.       Information about the Q3 2016 Earnings Call

Barney seeks responses to questions attempting to ascertain why Dvorak did not mention the FDA audit and complete production halt on the Q3 2016 earnings call. Barney alleges that during preparations for the call, she had been asked by the CFO to "concoct a 'story' to mislead investors about the root cause of [sales] shortfalls" that quarter. [DE 104 at 13]. Barney believes that the FDA audit and product holds were to blame and refused to lie, which lead, in part, to her resignation due to her concern that she could be held criminally liable for securities misrepresentations. As such, she contends that the earnings call is relevant to her case, which is premised on her fear of criminal liability if she had made the misrepresentations the CFO ordered.

There is no doubt that the content of the earnings call is relevant to Barney's claims. In fact, Barney already has a transcript from the call from which she can see exactly what Dvorak said on the call, including the fact that he did not mention the FDA audit or product holds. [See DE 104-11]. Barney also gleaned additional information about the call through Dvorak's deposition testimony. █████████████████

█████████████████████████████████████████████████

██████████████████████. Despite her arguments, Barney has not shown that she is entitled to Dvorak's underlying rationale for his statements or omissions on the call. Moreover, Zimmer Biomet reasonably points out that Barney's questions about Dvorak's rationale go to his state of mind, which is relevant to the claims raised in the parallel securities fraud case *Shah v. Zimmer Biomet Holdings* but not to Barney's discrimination claims in this case. Therefore, Dvorak need not answer Barney's two remaining questions about the Q3 2016 earnings call.

Thus, as to Dvorak, the only question remaining is whether his deposition should be reconvened to secure answers to the eleven questions regarding the actual circumstances of his departure from Zimmer Biomet. As Zimmer Biomet correctly notes, reconvening the deposition will incur costs and pose an additional burden on Dvorak, a non-party. Yet, Zimmer Biomet's attorney improperly instructed Dvorak not to answer these relevant questions without even an attempt to fall within the requirements of Rule 30(c)(2). Moreover, Dvorak was only deposed for five hours even though the Court allowed for depositions up to seven hours in its Rule 16(b) Scheduling Order. [DE 94 at 1]. Thus, unless the parties identify and agree to an alternative method for securing Dvorak's answers to these questions, the parties shall reconvene Dvorak's deposition for a maximum of two additional hours and for the limited purpose of answering the eleven unanswered questions about the actual circumstances of his departure.[8]

---

[8] This order now provides the basis for an objection under Rule 30(c)(2) should Barney's counsel stray from the scope of the deposition allowed herein.

### 2.    Kunz

Barney also wants to reconvene Dave Kunz's deposition so that he can answer the one question Attorney Brown instructed him not to answer during his June 2018 deposition as well as any follow-up questions that may arise. At issue is Barney's question asking Kunz to identify the terms of his severance agreement. Barney argues that Attorney Brown's instruction to Kunz not to answer the question based on "scope" did not comply with Fed. R. Civ. P. 30(c)(2). Barney also directs the Court to his argument made in support of the non-party subpoenas that "information about Mr. Kunz's compensation is relevant to show bias." [DE 104 at 15].

While Attorney Brown's instruction to Kunz was probably improper under Rule 30(c)(2), Barney has not demonstrated the relevance of Kunz's severance agreement to this case. Barney does not suggest that Kunz's severance agreement is relevant to her assessment of potential comparators. Instead, Barney seems to suggest that Kunz's compensation could bias his testimony in this lawsuit. This is not a shocking revelation. Kunz is still employed by Zimmer Biomet, is necessarily compensated for his work, and is probably even loyal to his employer generally. Yet Barney has not shown that the promise of future severance benefits in certain circumstances could, let alone would, increase any bias in his testimony. Unsubstantiated claims of bias have led this Court to deny motions to compel in the past. *See, e.g.*, *Henman v. Ind. Harbor Belt R.R. Co.*, Cause No. 2:14-CV-434-JTM-JEM, 2015 WL 6449693, at *2 (N.D. Ind. Oct. 22, 2015). Without more, Barney's motion to compel is not justified as to the Kunz deposition question.

C.      Non-party Deponents' Subpoena Responses

Attached to the notices of deposition served upon Dvorak, Kunz, Florin, and Fisher[9] in early 2018 were subpoenas duces tecum commanding production of "[c]opies of any and all contracts or agreements that you signed with Zimmer Biomet or its predecessor companies, including but not limited to employment agreements, severance agreements, noncompetition agreements, and nondisclosure agreements, and a copy of your current resume[10]." [DE 104-2 at 1–17]. Zimmer Biomet objected to the requests as overbroad, unduly burdensome, and duplicative of RFPs 13 and 15 to Zimmer Biomet.

Recognizing these arguments, Barney's Renewed Motion to Compel only seeks "[d]ocuments which provide or purport to provide any monetary benefit to the deponents, or which prevent  or purport to prevent the disclosure of the receipt of any such benefits or any other information about which any of the deponents may be required to testify." [DE 114 at 14]. In support, Barney argues that the requested documents are relevant to the potential bias of these witnesses. In support, she directs the Court's attention to events prior to Dvorak's deposition whereby she was told, on two occasions in April 2018, that Dvorak was receiving no compensation in connection with assistance provided in this case █████████████████████████

████████████████████████████████████

---

[9] The same deposition and subpoena were served on Mike Norris, Zimmer Biomet's former Vice President of Tax in early 2018. [DE 104-2 at 18–21]. However, Barney indicates that she no longer seeks information related to Mr. Norris. [DE 104 at 17 n.5].

[10] Barney is not raising any concerns about the resumes in her Renewed Motion to Compel.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ Yet Barney's efforts to clarify her requests and tailor them to the issue of bias fail.

First, Dvorak has already produced sufficient documentation of his compensation, especially his compensation related to his assistance with this case, as discussed above. Therefore, Dvorak need not produce any additional documents in response to Barney's subpoena.

Second, Barney's allegedly narrowed request is not particularly narrow as to Kunz, Florin, and Fisher. It still seeks all documents providing "any monetary benefit" to the deponents without any showing of relevance to her discrimination claims or to the bias of these deponents. As discussed above, current employees like Kunz, Florin, and Fisher obviously receive compensation or "monetary benefit" from Zimmer Biomet and probably have loyalties to Zimmer Biomet as a result. This is not unique to this case or plainly relevant to the potential bias of these deponents. Moreover, the deponents' compensation agreements implicate their privacy interests that are worthy of protection given Barney's failure to demonstrate relevance. *See Henman,* 2015 WL 6449693, at *2–*3. To the extent Barney's allegedly narrowed request reflects a concern that Kunz, Florin, and Fisher may be bound by non-disclosure agreements that might lead them to withhold relevant information related to this case, Barney still offers nothing to substantiate her fear. Thus, demanding that Kunz, Florin, and Fisher produce their assorted agreements with Zimmer Biomet is neither warranted nor proportional.

27

### D.    Rule 37(a)(5) Reasonable Expenses

Based on the  Court's findings outlined above, the Court will be granting in part and denying in part Barney's Renewed Motion to Compel. Under Fed. R. Civ. P. 37(a)(5)(C), when a motion to compel "is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Here, the discovery disputes at issue in Barney's Renewed Motion to Compel have plagued this aging case for a long time. Ultimately, the parties and their counsel pressed these issues into the Court's hands following an inconstant effort on their part to resolve the dispute, which failed to produce a clear commitment to meaningful negotiation or compromise. In effect, the parties and counsel caused the expenditure of time and money on these issues, which could have been mitigated further or possibly eliminated altogether. Therefore, the parties shall be responsible for their own expenses in litigating Barney's Renewed Motion to Compel.

### III.    MOTIONS TO SEAL

Accompanying the briefing of Barney's instant Renewed Motion to Compel are three motions to seal certain exhibits attached to the briefing as well as portions of each brief discussing the exhibits. These motions invoke this Court's existing protective order [DE 35] and its previous order to seal certain confidential information filed in related to other motions [DE 60 at 9] in support of the parties' requests to seal exhibits and briefs related to the instant motion. Upon review of the relevant record, the Court finds that the parties have demonstrated good cause to seal the briefs and exhibits as requested.

See *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999). Accordingly, the Court grants all three motions to seal as outlined below.

## IV. CONCLUSION

For the reasons discussed above, the Court

(1) **GRANTS IN PART** Barney's Renewed Motion to Compel. [DE 103].

(a)  On or before **July 15, 2020**, Zimmer Biomet must:

- Supplement its answers to Barney's ROGs 7 & 8 in verified Interrogatory form as outlined above;

- Supplement its responses to Barney's RFP 5 & 13 consistent with the scope of relevant comparator discovery outlined above, OR serve an affidavit or verified response upon Barney stating that no further responsive information exists; AND

- Supplement its response to Barney's RFP 15 with responsive information regarding David Lino

(b)  On or before **August 1, 2020**,

- David Dvorak must appear for no more than two additional hours of deposition to answer the eleven previously unanswered questions regarding the actual circumstances of his departure from Zimmer Biomet, as restated in Barney's Motion. [*See* DE 106 at 7–8]; BUT

- Barney is **BARRED** from asking Dvorak:
  o  the nineteen unanswered questions regarding his post-employment compensation from and obligations to Zimmer Biomet [DE 106 at 10–11]; and
  o  the two unanswered questions regarding the Q3 2016 investor call [DE 106 at 14].

(2) **DENIES IN PART** Barney's Renewed Motion to Compel [DE 103] as to:

- Reconvening the deposition of Dave Kunz; AND

- Further compliance with the nonparty subpoenas to David Dvorak, Dave Kunz, Dan Florin, and Bill Fisher.

29

(3)    **GRANTS** the parties' motions to seal [DE 105, DE 111, DE 115] and **DIRECTS** the Clerk to maintain under seal DE 106, DE 112, and DE 116 and all exhibits attached to those filings.

In light of the confidential nature of information included in all the briefs and some of the exhibits related to Barney's Renewed Motion to Compel, the Court also **DIRECTS** the Clerk to maintain this Opinion and Order under seal. The parties may file a motion to redact portions of this Opinion and Order, if deemed necessary. If no such motion is filed by **July 15, 2020**, the Clerk will be directed to unseal this Opinion and Order and release it in full on the public docket of this Court.

    **SO ORDERED** this 10th day of July 2020.

                          s/Michael G. Gotsch, Sr.
                          Michael G. Gotsch, Sr.
                          United States Magistrate Judge